UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                                                          Chapter 11

77 Varet Holding Corp.,                                              Case No. 22-42316-NHL
162-164 82nd St. LLC,                                                Case No. 22-42569-NHL

                                  Debtors.                         Jointly Administered
--------------------------------------------------------x

## DEBTORS' REVISED SECOND AMENDED
## CHAPTER 11 JOINT PLAN OF REORGANIZATION

77 Varet Holding Corp. and 162-164 82nd St. LLC (each, a "Debtor," and, collectively, the "Debtors") hereby propose the following Revised Second Amended Chapter 11 Joint Plan of Reorganization (the "Plan") pursuant to §1121(a) and other provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## OVERVIEW

The Plan is the product of extensive negotiations with the Debtors' secured creditor, East 82nd Holdco LLC (the "Lender") and provides for the auction sale of the Debtors' real property located at 162-164 82nd Street, New York, NY (the "Property"). Initially, the Debtors negotiated a discounted payoff to the Lender, provided the Debtors concluded a refinancing on or before April 1, 2023. When the Debtors were unable to meet that deadline, the Plan indefeasibly toggled to a sale of the Debtors' Property at public auction without further delay under an alternate sale scenario, defined as the "Alternate Sale Option" for purposes of the Plan. The parties agreed that the Debtors would retain Rosewood Realty Group ("Rosewood") as the Debtors' broker (subject to Bankruptcy Court approval). The Property will be sold under an auction process based upon approved bidding procedures and credit bid rights in favor of the

Lender. Following Confirmation of the Plan and consummation of the sale of the Property, the Lender shall receive the net sale proceeds after payment by the successful bidder of the "Residual Plan Payments", consisting of allowed Administrative Claims as capped pursuant to the Cash Collateral Stipulation, U.S. Trustee fees and Priority Claims, plus payment of non-insider General Unsecured Creditors subject to a $50,000 cap.

As discussed below in more detail, the principals of the Debtors have guaranteed the payment of non-insider General Unsecured Creditors who previously filed timely proofs of claim.

## ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1 "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Property; and (b) compensation for the Debtors' legal counsel and professional advisors (the "Professionals") as allowed by the Bankruptcy Court.

1.2 "**Allowed Claim**" means a Claim timely filed before the Bar Date or which was scheduled by the Debtors without being designated as contingent, unliquidated or disputed, and in either case, a claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the creditor and the Debtors.

1.3 "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.4 "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by the Debtors pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented.

1.5 "**Bar Date**" means March 15, 2023, the deadline set by the Bankruptcy Court to file a Claim against the Debtors.

1.6 "**Causes of Action**" means any rights, claims, causes of action, damages and remedies in favor of the Debtors' estate relating to any pre-petition transactions (including all avoidance claims under the Bankruptcy Code or state law).

1.7 "**Cash Collateral Stipulation**" means the Stipulation Authorizing Debtors' Use of Cash Collateral, Providing Adequate Protection of Lender's Interests, and Granting Related Relief, approved by Order of the Bankruptcy Court entered on January 23, 2023.

1.8 "**Claim**" means a claim against the Debtors as defined in Bankruptcy Code § 101(5).

1.9 "**Claim Objection Deadline**" shall mean the later of thirty (30) days after the Effective Date of the Plan or thirty (30) days after the Bar Date.

1.10 "**Class**" means a category of holders of Claims or Equity Interests as set forth in Article IV herein.

1.11 "**Closing Date**" means the date on which the refinancing or the sale closes.

1.12 "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.13 "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.14 "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.15 "**Creditor**" means the holder of a Claim against the Debtors.

1.16 "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP for purposes of effectuating the initial distributions provided hereunder. The Disbursing Agent shall not be required to obtain a bond.

1.17 "**Disputed Claim**" means: (a) any Claim that is listed in the Debtors' schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and (b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed prior to the Claims Objection Deadline, and no final order has been entered resolving such objection.

1.18 "**Effective Date**" means the Closing Date on the transfer of the Property. The Closing Date shall occur no later than June 30, 2023 (time of the essence).

1.19 "**Final Order**" means an order of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal, has been sought, the order of the Bankruptcy Court has

been affirmed by the highest court to which the order was appealed from and the time to take any further appeal has expired.

1.20 "**Petition Date**" shall mean either September 21, 2022, the date of the filing of the Bankruptcy Case by 77 Varet Holding Corp. or October 14, 2022, the date of the filing of the Bankruptcy Case by 162-164 82nd St. LLC.

1.21 "**Priority Claim**" means any Claim that is entitled to priority pursuant to Bankruptcy Code § 507(a) that is timely filed or which was scheduled by the Debtors without being designated as contingent, unliquidated or disputed, and in either case, a Claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the Debtors and the Lender.

1.22 "**Priority Tax Claim**" means any Claims of a federal, state or local taxing authority for real estate taxes or related charges.

1.23 "**Reorganized Debtors**" means the Debtors following confirmation of the Plan.

1.24 "**Residual Plan Payments**" means allowed Administrative Claims as capped pursuant to the Cash Collateral Stipulation, U.S. Trustee fees and Priority Claims, plus payment of previously filed and allowed non-insider General Unsecured Creditors subject to a $50,000 cap.

1.25 "**Secured Claim**" means a Claim secured by a lien, mortgage or security interest on any or all of the Properties.

1.26 "**Secured Loan Documents**" means (i) that certain Consolidated and Restated Mortgage Note dated as of June 15, 2017 memorializing a loan in the original amount of $10,500,000.00, together with all accrued interest thereon and fees and costs (the "Senior Loan"), executed by 162-164 82nd St. LLC in favor of Dime Savings Bank and later assigned to the Lender; and (ii) that certain Mezzanine Promissory Note dated as of June 15, 2017 memorializing a loan in the original amount of $1,500,000.00, together with all accrued interest thereon and fees and costs (the "Mezzanine Loan") as secured by a Pledge Agreement of even date both of which were executed by 77 Varet Holding Corp. in favor of Dime Savings Bank and later assigned to the Lender.

1.27 "**Unsecured Claim**" means any allowed general unsecured claim arising prior to the Petition Date not entitled to priority in bankruptcy or otherwise secured by property of the Debtors.

1.28 "**Unsecured Creditor**" means the holder of an Unsecured Claim.

1.29 "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTEREST

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Secured Tax Claim of New York State.

**Class 2** – Allowed Secured Claim of New York City Water Board.

**Class 3** – Allowed Secured Claim of the Senior Lender.

**Class 4** – Allowed Non-Insider General Unsecured Claims.

**Class 5** – Allowed Insider General Unsecured Claims.

**Class 6** – The Equity Interests of the Debtors and Reorganized Debtors.

## ARTICLE III

### UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Priority Tax Claims, Administrative Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9).

3.1     **Administrative Expenses**.     Administrative Expenses consist primarily of Professional Fees plus any unpaid fees, costs and expenses incurred by the Debtors in operating the Property during the Chapter 11 cases. The Debtors are current with their post-petition operating expenses and expect to remain so throughout the duration of the Chapter 11 cases. As of March 1, 2023, the Debtors paid real estate taxes of $334,259.79 and maintained approximately $214,000 in the DIP account to cover on-going expenses. In the event that any undisputed Administrative Expenses are outstanding as of confirmation, they shall be paid on the Effective Date. Any unpaid Administrative Expense claims for which a request for payment is

5

timely prior to the Administrative Bar Date shall be paid upon the entry of an Order allowing such request.

    3.2    **Administrative Expense Bar Date**.  A date establishing an Administrative Expense Bar Date shall be fixed by separate Order at the time of the entry of the Confirmation Order, and shall be served upon all creditors and other parties-in-interest.  All requests for payment of Administrative Expenses that accrued on or before the Confirmation Date must be filed with the Bankruptcy Court by the Administrative Expense Bar Date, except for Professional Fee Claims.  Any holder of an unpaid Administrative Expense which fails to file a timely request for the payment of an Administrative Expense shall be forever barred, estopped and enjoined from asserting such Administrative Expense against the Debtors and Reorganized Debtors.

    3.3    **Professional Fee Claims**.  All requests by the Debtors' retained professionals for allowance of fees and reimbursement of expenses ("**Professional Fee Claims**") shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. § 330.  The Professionals retained or to be retained, in these cases are the Debtors' attorneys, Goldberg Weprin Finkel Goldstein LLP and David Goldwasser of FIA Capital Partners LLC as Chief Restructuring Officer and Rosewood as Broker.  Excluding Rosewood, the Professionals have agreed that their respective combined fees from both Debtors shall not exceed $100,000 each (inclusive of retainers) (the "**Professional Fee Cap**").  The allowed amounts of Professional Fee Claims shall be determined by the Bankruptcy Court and paid by the Disbursing Agent upon entry of an appropriate Order awarding such compensation after notice and a hearing, except that Rosewood shall seek a buyer's premium as part of its commission arrangement pursuant to separate application and order.

3.4     **Priority Tax Claims**.  To the extent any allowed Priority Tax Claims are not paid prior to the Effective Date, all allowed Priority Tax Claims shall be paid on the Effective Date of the Plan from the sale proceeds as part of the Residual Plan Payments.

3.5     **U.S. Trustee Fees**.  To the extent not otherwise paid, the Debtors shall pay all accrued U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 cases are closed by entry of a Final Decree.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.

4.1     **Summary**.  The categories listed below classify Claims and Equity Interests against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| **Class** | **Designation** | **Impaired** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Secured Tax Claim of NY State | No | No |
| Class 2 | Secured Claim of NYC Water Board | No | No |
| Class 3 | Lender's Secured Claim | Yes | Yes |
| Class 4 | Non-Insider Unsecured Claims | Yes | Yes |
| Class 5 | Insider Unsecured Claims | Yes | Yes |
| Class 6 | Equity Interests | Yes | Yes |

4.2     **Class 1: The Allowed Secured Tax Claim of New York State**

**Classification** – Class 1 consists of the allowed Secured Tax Claim of New York State.

**Treatment** – New York State has filed a proof of claim including a secured claim in the amount of $1,037.96.  The allowed Secured Tax Claim shall be paid in full on the Effective Date of the Plan.

**Voting** – Class 1 is unimpaired and not entitled to vote on the Plan.

7

4.3     **Class 2: The Allowed Secured Tax Claim of NY City Water Board**

**Classification** – Class 2 consists of the allowed Secured Claim of NY City Water Board, which has a scheduled claim in the amount of $1,117.82.

Treatment – The allowed Secured Claim of NY City Water Board shall be paid in full on the Effective Date of the Plan.

Voting – Class 2 is unimpaired and not entitled to vote on the Plan.

4.4     **Class 3: The Secured Claims of the Lender**

**Classification** - Class 3 consists of the allowed secured claims of the Lender pursuant to the Secured Loan Documents in the total pre-petition sum of $17,550,741.22 as of October 14, 2022 (the 162-164 82nd St. LLC Petition Date), including all principal, accrued interest, fees and costs (together, the "Allowed Secured Claim").  The Allowed Secured Claim may include additional interest and reasonable fees, costs, or charges provided for under the Secured Loan Documents or applicable law pursuant to Bankruptcy Code § 506(b).

**Treatment** – While the total sum of at least $17,550,741.22 is owed to the Lender as of the October 14, 2022 Petition Date, the Debtors were granted the right to satisfy the Allowed Secured Claim at a lesser amount by means of the Refinancing and payment to the Lender of the Reduced Payoff in the amount of $16,750,000 prior to the April 1, 2023 refinancing deadline, time of the essence (the "Reduced Payment Option").  Since the Reduced Payment Option was not effectuated prior to the refinancing deadline, the Debtors are pursuing a sale of the Property pursuant to a conventional sale process (the "Alternate Sale Option").  To this end, the Debtors have obtained an Order of the Bankruptcy Court authorizing the retention Rosewood as the broker and approving bidding procedures.  The Lender initially established a time of the essence deadline of May 1, 2023 to obtain confirmation, have the Plan go effective, close the sale

transaction, and satisfy the Lender's claim. The Lender has extended this deadline to June 30, 2023 to provide more time for the marketing of the Property for sale by Rosewood. The Debtors intend to meet this revised deadline.

In the event that the Lender is the successful bidder at the auction based upon a credit bid, it shall receive title to the Property in satisfaction of its claim at the closing upon payment of the Residual Plan payments. If the Property is sold to a third party, the Lender shall receive its share of the Residual Plan Payments in satisfaction of its claims on the Effective Date of the Plan.

**Voting** –The Allowed Class 3 Claim of the Lender is impaired and is entitled to vote on the Plan.

4.5     **Class 4: Non-Insider Unsecured Claims**

**Class 4: Non-Insider Unsecured Claims Classification** – Class 4 consists of the allowed Unsecured Claims of Non-Insider General Creditors, including all pre-petition vendors and service providers.

**Treatment** – On the Effective Date, each holder of a timely filed and Allowed Class 4 Unsecured Claim shall be paid a *pro rata* share of $50,000 to be carved out of the sale proceeds. As per the schedule annexed hereto as Exhibit "C", there are currently only four (4) Class 4 creditors holding timely filed claims aggregating $39,026.99, so that the Debtors currently project that all Class 4 creditors will be paid in full. In the event of a shortfall, the principals of the Debtors have agreed to guarantee that the creditors listed in Exhibit "C" will be paid in full (the "Guaranty").

Within the last few days, the Debtors learned that a tort claim was asserted by one Sari Rosenberg, who alleges to have slipped and sustained injuries on the Property in April 2022, prior to the Petition Date. An action was commenced against the Debtors, although the Debtors

were previously unaware of either the claim or the litigation. In any event, the claim should be covered by the Debtors' insurance policy, which has a $1 million per occurrence and $10 million umbrella on liability. The Debtors have moved for an amended bar date for the filing of claims by Ms. Rosenberg and all co-defendants in the action she commenced in Supreme Court, New York County. In the event of a timely filed Allowed Claim under the amended bar date, the claimant(s) will share in the $50,000 fund for Class 4 Creditors.[1] However, any claims arising in connection with this or any other tort claim currently unknown to the Debtors shall not be subject to the Guaranty.

**Voting** – Because of possible claims arising out of the Sari Rosenberg litigation, Class 4 is potentially impaired under the Plan and eligible to vote.

**Class 5: Insider Unsecured Claims**

**Class 5: Insider Unsecured Claims Classification** – Class 5 consists of the allowed claims of Insiders.

**Treatment** – The allowed Class 5 claims of Insiders as filed and scheduled shall be entitled to receive a *pro rata* payment of the residual proceeds, if any, from the sale of the Property, as soon as is practicable after all priority claims, administrative expenses, and Class 1, 2, 3 and 4 claims are paid in full.

**Voting** – Class 5 Claimants are eligible to vote, but their votes will not count toward confirmation because of their insider status.

---

[1] The Debtors have offered to stipulate with Ms. Rosenberg to permit the automatic stay to be vacated as of the Petition Date so that she may continue her action, on condition that she limit her claim to the Debtors' insurance and waive all other claims against the Debtors and the Debtors' estates.

4.6     **Class 6: Equity Holders**

**Classification** – Class 6 consists of the membership interests of the Debtors' equity holders.

**Treatment** – All existing pre-petition Equity Interests in the Debtors shall be canceled following the Effective Date.

**Voting** – Class 5 Claimants are eligible to vote, but their votes will not count toward confirmation because of their insider status.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     **Plan Funding**.  The Plan shall be funded with residual cash available in the DIP account, subject to the terms of the Cash Collateral Stipulation, and, under the Alternative Sale Option, by the sale proceeds generated from either a third-party buyer or the Lender's funding obligations under its credit bid.  For a point of emphasis, since the Debtors were unsuccessful in obtaining a Refinancing then the Plan has automatically and indefeasibly "toggled" in favor of the Alternate Sale Option, and the Debtors are required to convey title to the Property pursuant to approved bidding procedures following an auction and approval of the sale by the Bankruptcy Court either to a third-party purchaser or Lender as applicable.  The transfer of the Property shall be free and clear of all claims, liens and encumbrances pursuant to Sections 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code.

For purposes of the auction, Lender shall be permitted to assert a credit bid up to the amount of its allowed pre-petition claim.  The Lender may, but is not required to make a credit bid, and is not being designated as a stalking horse bidder, although if the Lender does, in fact,

credit bid, that credit bid will necessarily establish a minimum bid that must be exceeded by other potential buyers.

The sale of the Property shall be free and clear of all claims, liens and encumbrances pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1141(c). In the event the Lender is the high bidder, then the Lender, on the Effective Date, shall deposit with the Disbursing Agent, sufficient monies to pay the Residual Plan Payments. All disbursements under the Plan shall be made by the Debtors' bankruptcy counsel, Goldberg Weprin Finkel Goldstein LLP as the duly designated Disbursing Agent.

5.2     **Exemption from Transfer Taxes.**  To the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an instrument of transfer and deed executed by the Debtors shall not be subject under any law imposing a stamp tax, real estate transfer tax, mansion tax, or similar tax. Accordingly, the appropriate state or local government officials or agents shall forego collection of any such transfer tax and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such transfer tax.

5.3     **Post-Confirmation Management.**  The post-confirmation management of the Debtors shall continue pending the dissolution of the Debtors following closing of the sale transaction.

5.4     **Substantive Consolidation.**  Upon confirmation of the Plan, the Debtors shall be substantively consolidated for purposes of Confirmation. As a result, a holder of a Claim scheduled against one or more of the Debtors arising from or relating to the same underlying debt shall only have a single Allowed Claim against all of the Debtors regardless of whether the

Claim is based on a specific note or joint and several liability, contribution, indemnity or subrogation.  Such substantive consolidation, however, shall not affect (other than for Plan voting, treatment, and/or distribution) the legal and corporate structures of the Reorganized Debtors. As part of the confirmation process, the Plan shall serve as a motion to substantively consolidate the Chapter 11 Cases. Unless an objection to substantive consolidation is made in writing by any creditor affected by this Plan in conjunction with confirmation; the Confirmation Order shall include a provision approving Substantive Consolidation.  In the event any objections to Substantive Consolidation are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court as part of the Confirmation Hearing.

5.5     **Preservation of Causes of Action.**  **T**he Debtors are unaware of any specific rights, claims, causes of action, damages or remedies in favor of the Debtors' estate relating to any pre-petition transactions (including all avoidance claims under the Bankruptcy Code or state law).

## ARTICLE VI

## INJUNCTIONS, RELEASES AND EXCULPATION

6.1     **Injunction**.  Except (i) as otherwise provided in the Plan or Confirmation Order or (ii) to enforce the Plan or Confirmation Order, on and after the Effective Date, all persons and entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtors that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Bankruptcy Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtors or the Property; or (b)

enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtors or the Property.

   6.2 **Mutual Releases**.  Subject to the occurrence of, and as of the Effective Date, and in consideration for the consent of the Insiders to substantive consolidation and the subordination of their claims to the claims of non-insider general unsecured creditors, as set forth above, the Lender on the one hand, and the Debtors and any individual guarantors on the other hand, together with their respective officers, directors, shareholders, members, principals, agents, employees, heirs, successors, and assigns are deemed to mutually release and discharge the other (together with their respective officers, directors, shareholders, members, principals, agents, employees, heirs, successors and assigns) from each and every claim, action, demand, right, lien, covenant, agreement, contract, representation, warranty, indemnity, debt, liability, lawsuit, loss or damage arising under and relating to the Secured Loan Documents which has been or could have been asserted on or before the Effective Date, whether or not presently known, existing, suspected, liquidated, fixed, contingent, matured or anticipated, and whether in tort or contract or otherwise, it being the intent of the parties that the Plan once confirmed and effective provides a full and complete settlement and mutual general release as set forth herein.

   6.3 **Exculpation**.  Notwithstanding any other provision of the Plan, neither the Debtors nor their respective officers, directors, members, employees or other agents, financial advisors, attorneys, accountants or Professionals shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful

misconduct or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court. Nothing contained in this Section shall be deemed to limit any liability of counsel under N.Y. Rules of Professional Conduct Section 1.8(h).

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     **Assumption of Leases**.  The Debtors' existing residential leases with the tenants at the Property are hereby deemed assumed pursuant to 11 U.S.C. §365, with the cure of any defaults relating to the condition of the apartments or remediation of outstanding violations to be made by the Debtors and Reorganized Debtors (or the Lender in the event of the exercise of the Alternate Sale Option hereunder) in the regular course of business and without the need for the filing of a cure claim.

7.2     **Choice New York**.  The Debtors' existing month to month management contract with its current third-party management company Choice NY", is being rejected and terminated pursuant to a written agreement between the Debtors and Choice NY, pursuant to which, *inter alia*, Choice NY is waiving any rejection claim against the Debtors.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1     **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction after Confirmation of the Plan to consider the following matters:

(a)     To enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code;

(b)     To issue any Orders as may be necessary to effectuate sale and transfer of the Property;

  (c) To ensure that the Plan is fully consummated, and to enter a Final Decree;

  (d) To allow, disallow, determine, liquidate or classify any Claims and Administrative Expenses;

  (e) To consider applications filed by Professionals for final compensation and reimbursement of expenses; and

  (f) To resolve any motions, adversary proceedings or applications pending on the Effective Date.

## ARTICLE IX

## GENERAL PROVISIONS

9.1 **Headings**.  The headings in the Plan are for reference purposes only.

9.2 **Contents of Confirmation Order**.  The Confirmation Order may contain various provisions as may be necessary to modify, implement or enforce the Plan.

9.1 **No payment of Disputed Claims**.  The Plan contemplates the payment of Allowed Claims only.  No distributions shall be made on account of any Disputed Claim(s), until such Disputed Claim(s), or any part thereof, becomes an Allowed Claim in whole or in part.  The Debtors shall establish an appropriate reserve with respect to any claims under objection as of the Claims Objection Deadline. The reserve shall be equal to a 100% distribution on account of the Disputed Claim(s) should the Disputed Claim(s) be deemed Allowed Claim(s) in full.

9.3 **Modification of the Plan.**  The Plan may be altered, amended or modified by the Debtors at any time before substantial consummation thereof in accordance with the Bankruptcy Code, following notice and a hearing.

9.4 **Quarterly Fees**.  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtors until the earlier of the conversion or

dismissal of this case under 11 U.S.C. §1112 of the Bankruptcy Code, or the closing of the Chapter 11 case under 11 U.S.C. §350(a).

9.5     **Notice of Effective Date of the Plan**.  The Debtors shall file with the Court a Notice of the Plan's Effective Date within three (3) business days of the occurrence of the Effective Date.

9.6     **Post-Confirmation Reports**.  Commencing on the Effective Date, the Reorganized Debtors shall file reports with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by or on behalf of the Debtors.  The reports shall be filed within twenty (20) days after the conclusion of each such period until the cases are closed by means of the entry of a Final Decree closing Debtors' bankruptcy cases, dismissal or conversion, whichever happens earlier.  All such reports shall be prepared consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee's Guidelines for such matters pursuant to 28 C.F.R. §58.8.

9.7     **Closing the Case**.  Within fourteen (14) days following the full administration of the Debtors' estates, the Debtors shall file on notice to the United States Trustee, an application, and proposed Order for a Final Decree.

Dated: New York, NY
       June 14, 2023

| | |
|---|---|
| 77 Varet Holding Corp.<br>162-164 82nd St. LLC<br>*Debtors and Debtors in Possession* | Goldberg Weprin Finkel Goldstein LLP<br>*Attorneys for the Debtors and Debtors in Possession*<br>125 Park Avenue, 12th Floor<br>New York, NY 10017 |
| By:    /s/ David Goldwasser, CRO | By:    /s/ J. Ted Donovan, Esq. |
| By:    /s/ Reuven Azrak, Member | |