| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | Confirmation Date and Time:<br>June 27, 2023 at 10:00 a.m. |

-----------------------------------------------------------x

In re:                                                                                  Chapter 11

77 Varet Holding Corp.,                                                    Case No. 22-42316-NHL
162-164 82nd St. LLC,                                                      Case No. 22-42569-NHL

                                  Debtors.                                      Jointly Administered

-----------------------------------------------------------x

**DECLARATION OF KEVIN J. NASH IN SUPPORT OF
CONFIRMATION OF THE DEBTORS' REVISED SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Kevin J. Nash declares under penalties of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. My firm has served as bankruptcy counsel to 77 Varet Holding Corp. and 162-164 82nd St. LLC (each, a "Debtor," and, collectively, the "Debtors") since commencement of these Chapter 11 cases last year, and handled to all aspects of the bankruptcies, taking the lead on negotiating with the Debtors' secured lender, East 82nd Holdco LLC (the "Lender") on an exit strategy in conjunction with David Goldwasser as the Debtor's proposed CRO. My firm and I drafted the plan and disclosure statement, as updated and revised, and I oversaw the auction of the Debtors' real property earlier this month. My firm has been designated as Disbursing Agent in connection with the plan and I will represent the Debtors' estates with respect to the closing of the sale of the property to the Lender. As such, I am fully familiar with all relevant matters and respectfully submit this Declaration in support of confirmation of the Debtors' Revised Second Amended Joint Chapter 11 Plan of Reorganization [ECF No. 80] (the "Plan").[1]

**I. Background**

1. The Debtors' major asset consists of two residential apartment buildings located on the Upper East Side of Manhattan at 162-164 East 82nd Street, New York, NY (the "Property").

---

[1] Capitalized terms used but not defined herein have the meanings given them in the Plan.

1

162-164 82nd St. LLC is the fee holder of the Property, while 77 Varet Holding Corp. is the 100% member of 162-164 82nd St. LLC.  The Property is subject to both a senior mortgage lien and a mezzanine loan, totaling approximately $17,500,000.

2. The Plan is the product of extensive negotiations with the Lender.  It provided the Debtors with a final opportunity to attempt to refinance the existing mortgage debt based upon a discounted pay-off, although in today's environment refinancing was always a long shot.  Simultaneously, the Debtor also pursued a sale of the Property pursuant to agreed bidding procedures under an auction sale process.  The Debtors could not obtain refinancing and the sale option went into effect in early April 2023.

3. Pursuant to bidding procedures approved by the Court on April 12, 2023 [ECF No. 66] as supplemented by a certain Stipulation and Order dated June 2, 2023 [ECF No. 72] (collectively, the "Bidding Procedures Orders"), Rosewood Realty Group ("Rosewood") was retained to market the Property for sale.

4. Based on an extensive marketing campaign, two prospective purchasers qualified as bidders and, together with the Lender, participated in the auction held on June 15, 2023 under my supervision.  As set forth in the Notice of Auction Results filed by the Debtors [ECF No. 84], the Lender made the highest and best bid in the amount of $17,550,741.22 based upon its credit bid rights pursuant to 11 U.S.C. §363(k).  The next highest bid was $10,200,000.  With the auction completed, the Debtors seek to confirm the Plan so as to be able to close the transaction prior to the June 30, 2023 deadline.

5. The Bankruptcy Court has entered an Order (the "Scheduling Order") approving this Disclosure Statement and scheduling a hearing to consider confirmation of the Plan on June 27, 2023 at 10:00 a.m., prevailing New York Time (the "Confirmation Hearing").

## II. The Essential Features of the Plan

6. At its core, the Plan accomplishes the Debtors' main goal of selling the Property under a transparent process. The current market for multi-family housing is very challenging. The actual bidding for the Property was much less than the credit bid, confirming that the Property is undersecured and, thus, the Plan provides a far better recovery for creditors than they could expect to obtain in a foreclosure.

7. Under the prior stipulation reached with the Lender, the Lender committed to pay allowed administrative claims (as capped) and priority claims in full and to establish a General Unsecured Creditor Fund of up to $50,000 to pay allowed unsecured claims in full.

8. The Lender is keenly aware of its funding obligations and will deposit all of the funds needed for the Plan with me as Disbursing Agent at the closing. The parties are already working on finalizing all necessary closing and conveyancing documents. The proposed Confirmation Order designates me as the estate representative for purposes of executing a deed and other closing documents for expediency. My office will handle all aspects the closing on behalf of the Debtors.

9. No objections to confirmation have been filed with the exception of the limited objection by the U.S. Trustee regarding the proposed retention of David Goldwasser as chief restructuring officer. Although an application for the retention of Mr, Goldwasser and his firm, FIA Capital Partners LLC as CRO was prepared and submitted to the U.S. Trustee for approval, the U.S. Trustee raised a number of objections relating to the terms of compensation and the scope of services to be performed which we were unable to resolve. Thus, the application has not been formally filed, although Mr. Goldwasser has rendered valuable administrative services during the Chapter 11 cases. The Lender is willing to pay Mr. Goldwasser for his services based upon his agreed cap of $65,000 (net of retainer). At any rate, the issue of Mr. Goldwasser's fees can be

handled on a post-confirmation basis as necessary without impeding confirmation of the Plan itself with a mutual reservation of rights.

10. Ballots accepting the Plan have been received from various creditors as set forth in the Certification of Balloting filed separately herewith. Accordingly, the Debtors are prepared to proceed to confirmation under 11 U.S.C. §11129(a).

### COMPLIANCE WITH SECTION 1129(a) OF THE BANKRUPTCY CODE

11. Section 1129(a)(1). The Plan complies with the Bankruptcy Code.

12. Section 1129(a)(2). The Debtors have complied with the applicable provisions of the Bankruptcy Code in terms of disclosure and the solicitation of ballots.

13. Section 1129(a)(3). The Plan has been proposed in good faith.

14. Section 1129(a)(4). All payments and professional fees for services rendered in connection with the bankruptcy case remain subject to approval of the Bankruptcy Court as being reasonable, including any additional payments to Mr. Goldwasser.

15. Section 1129(a)(5). The requirement of Section 1129(a)(5) providing for the Plan proponent to disclose all necessary information regarding directors, officers, and insiders has satisfied through the Disclosure Statement.

16. Section 1129(a)(6). Because the Plan does not propose any rate changes, Section 1129(a)(6) does not apply.

17. Section 1129(a)(7). The Plan complies with the best interests test under Section 1129(a)(7) of the Bankruptcy Code. This is amply demonstrated by the fact that, following an active marketing campaign, there were no bids received coming close to the total secured debt held by the Lender. Without any equity in the Property, other creditors will plainly receive more under the Plan than they could possibly be paid in a Chapter 7 case.

18.     Section 1129(a)(8). As set forth in the Certification of Balloting (the "Certification") the Plan has been accepted by at least one impaired class.

19.     Section 1129(a)(9). The Plan properly provides for the payment of Priority Claims and Administrative Claims in full based upon agreed caps.

20.     Section 1129(a)(10). As set forth in the Certification, Classes 3 and 4 voted to accept the Plan. Accordingly, the requirement of Section 1129(a)(10) that at least one impaired class accept the Plan, without counting insider claims, has been satisfied.

21.     Section 1129(a)(11). The Plan is feasible since the Debtors' cash obligations on the Effective Date are being funded by a lending institution which is anxious to close by June 30, 2023.

22.     Section 1129(a)(12). The Debtors shall continue to pay all accrued and future quarterly fees pursuant to 28 U.S.C. § 1930. Thus, the Plan complies with the requirements of Section 1129(a)(12) of the Bankruptcy Code.

23.     The balance of the requirements under 11 U.S.C. § 1129(a)(13), (14), (15) and (16) do not apply to the Debtors.

24.     Premised upon the foregoing, the undersigned respectfully submit that the Plan should be confirmed pursuant to 11 U.S.C. §1129(a).

Dated:  New York, NY
        June 26, 2023
\

                                By:     /s/ Kevin J. Nash